Jesus Gomez and Delia Gomez v. Commissioner. Jesus Gomez v. Commissioner.
Gomez v. Commissioner
Docket Nos. 70287 and 70295.
United States Tax Court
T.C. Memo 1959-142; 1959 Tax Ct. Memo LEXIS 113; 18 T.C.M. (CCH) 628; T.C.M. (RIA) 59142; June 30, 1959
*113 Held, amount of tips received in taxable years determined. Grant G. Calhoun, Esq., 1017 MacDonald Avenue, Richmond, Calif., for the petitioners. Nat F. Richardson, Esq., and Clyde R. Maxwell, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined the years 1951-1955, inclusive, deficiencies in income tax and additions to tax *114 under sections 291(a), 294(d)(1)(A), and 294(d)(2) of the 1939 Code as follows: Section
Defi-
Section
294(d)
Section
Year
ciency
291(a)
(1)(A)
294(d)(2)
1951
$ 57.00
$14.25
$ 5.29
$ 3.42
1952
137.00
34.25
12.35
8.22
1953
177.00
8.85
29.70
19.80
1954
280.68
22.67
14.70
1955
281.02
The questions are as follows: (1) Whether petitioner, Jesus Gomez, failed to report in each year the entire amount of tips which he received. (2) Whether all of the additions to tax *115 were correctly imposed. Findings of Fact The petitioners are residents of Reno, Nevada. Jesus Gomez filed individual returns for 1951 and 1952. Joint returns were filed for the years 1953-1955, inclusive. The returns were filed with the director of internal revenue for the district of Nevada. The occupation of Jesus Gomez during the taxable years was that of a waiter. He is referred to hereinafter as the petitioner. On March 31, 1954, petitioner filed delinquent returns for the years 1951, 1952, and 1953. Petitioner did not keep any record of the amount of tips he received in each of the taxable years. The amounts of tips reported in his returns represented his estimates of what he received. Petitioner did not keep any records of the length of time in each year of the assignments made by his employer to different jobs. He did not keep a complete record of his expenditures in each year. Petitioner was a member of the Culinary and Hotel Service Union during the taxable years. Petitioner worked in restaurants in or near Los Angeles, California during 1951. During the years 1952-1955, he was employed by the Riverside and Mapes hotels in Reno, Nevada, with a few exceptions, *116 when he was employed for a short time in Long Beach, California and Las Vegas, Nevada. In his returns, petitioner reported tips in the amount of from $400 to $502, per year. The amounts of petitioner's wages and of reported tips for the taxable years were as follows: Wages
Tips Re-
Year
Employer
Received
ported
1951
Los Angeles Restau-
rants
$1,350.00 $500
1952
Riverside Hotel
1,378.89
500
1953
Gun Club
$ 7.00
Francois
971.97
Riverside
1,046.35
Other
10.00
2,035.32
500
1954
Riverside Hotel
2,933.84
1955
Las Vegas
$ 7.83
Mapes
1,267.81
Riverside
1,000.80
Rendesvous
270.00
2,546.44
502
The respondent determined that petitioner received a larger amount of tips in each year than he reported in his returns. The total amount of tips received which was determined by the respondent amounted to from about 60 per cent to 91 per cent of his total wages for each year. The total amount of tips determined by the respondent for each year, the percentage of wages represented by tips, and the amount of unreported tips for each year are as follows: Unre-
Total
Per cent
ported
Tips De-
of
Tips
Tips De-
Year
termined
Wages
Reported
termined
1951
$ 960
71% $500
$ 460
1952
1,320
91%
500
820
1953
1,400
70%
500
900
1954
1,760
60%
400
1,360
1955
1,598
70%
502
1,096
*117 The Riverside and Mapes hotels are the leading hotels in Reno. Each hotel operates a dining room where floor shows are presented. The Riverside Hotel's dining room with a floor show is called the Theatre Restaurant. The corresponding dining room at the Mapes Hotel is the Sky Room. The Mapes Hotel also has a small dining room called the Terrace Room. Other dining rooms at the Riverside Hotel are the Chuck Wagon, which specializes in serving steaks; and the Prospector's Club, which is a private membership luncheon club which is open only in the middle of the day. Petitioner was employed by the Riverside Hotel in 1952, and during that year he was a waiter in the Chuck Wagon dining room. In 1953, petitioner received $7 wages from Harold's Gun Club in Reno; $10 from Universal Pictures, Inc., in Hollywood, California and $971.97 from Francois' Restaurant in Long Beach, California. The length of time petitioner worked at Francois' is not shown. Petitioner received $1,046.35 from the Riverside Hotel in 1953. He was assigned to the Riverside Theatre Restaurant. During 1954, petitioner worked for the Riverside Hotel only. He worked in the Prospector's Club during the lunch hours, and *118 in the Theatre Restaurant during the evening. The records of the Riverside Hotel show that petitioner's total wages during 1954, $2,933.84, comprised regular wages, overtime, and payments taken in meals on the basis of 3-month quarterly accounting periods, as follows: Accounting
Regular
Over-
Period
Wages
time
Meals
Total
1st quarter
$ 453.78
$ 90.26
$ 62
$ 606.04
2nd quarter
657.97
39.07
65
762.04
3rd quarter
788.96
9.75
63
861.71
4th quarter
643.58
4.47
56
704.05
$2,544.29
$143.55 $246
$2,933.84
During 1954, petitioner did not work for 36 days, which period included July. During 1955, petitioner received $7.83 from the Riviera Hotel in Las Vegas, Nevada; $1,267.81 from the Mapes Hotel; and $1,000.80 from the Riverside Hotel. Petitioner worked in the Prospector's Club and in the Theatre Restaurant during 1955. At the Mapes Hotel, he worked part of the time in the Sky Room, during the winter months, and part of the time in the Terrace dining room. At both the Riverside and Mapes hotels, in the dining room where a floor show is presented, waiters work in teams of two waiters to a team. A team of waiters is assisted by *119 a bus boy. A team of waiters pool their tips, give 15 per cent thereof to the bus boy, and divide the remaining 85 per cent of the tips. The Prospector's Club dining room at the Riverside Hotel is open every day throughout the year from noon until 3 p.m. Two waiters are assigned to that room. The prices of meals were from 80 cents to $1.50. Alcoholic beverages are served. Only members of the Club are admitted. Members sign their checks. There is added to each check by the management 15 per cent of the total charge for the waiter's tip. During the years involved, the Theatre Restaurant and the Sky Room were open every night of the year, and in each room the floor show was presented twice each evening. Alcoholic beverages were served. Both rooms opened at 5 or 6 p.m. and closed at 2 a.m. The charges for meals in the Theatre Restaurant were from $3.50 to $6.50, with a minimum charge of $3.50. At the Sky Room the prices of meals ranged from $2.75 to $5.50. and the minimum charge was $2. The Theatre Restaurant at the Riverside Hotel contains 82 tables. When that room is fully occupied, a team of 2 waiters serves 36 people. The hotel restaurant business in Reno is seasonal. The best *120 season is from July 4 to Labor Day. The Riverside and Mapes hotels employ more waiters during the best season. During the busy season waiters may work 8 hours a day and overtime, and 6 days a week, the standard workweek. During the winter months when business is slack, waiters may work only 3 or 4 days a week. The poorest months of the year are November through February. In March, April, May, and October business is moderately good. Petitioner was unemployed during part of each of the years 1951-1955, and he worked only 3 or 4 days per week during the winter and spring months. He shared his tips with bus boys. Petitioner received tips during the years 1951-1955 in the amounts set forth below. In his returns for the taxable years he failed to report tips as follows: Total Tips
Tips
Unreported
Year
Received
Reported
Tips
1951
$ 600 $500 $100
1952
680
500
180
1953
1,000
500
500
1954
1,300
400
900
1955
1,272
502
770
Petitioner's failure to file returns timely for 1951, 1952, and 1953 was due to willful neglect; it was not due to reasonable cause. Opinion Tips are part of compensation for services, therefore, taxable income under *121 section 22(a), 1939 Code, as petitioner admits. , affirming ; Regs. 111, sec. 29.22(a)-2. The question for decision is whether the amount of tips received by petitioner in each taxable year is a larger amount than was reported. The respondent has determined that petitioner received a specific amount of tips. His determination is presumptively correct under law and petitioner has the burden of proving that each amount for tips actually received is not correct. ; ; ; 9 Mertens, The Law of Federal Income Taxation (Zimet Revision), sec. 50.61. If the petitioner fails to meet his burden of proof by presenting competent proof of the amounts of tips received, the respondent's determinations of the amounts must be sustained. Although the question is one of fact, it is of widespread interest both to the Commissioner and to taxpayers who receive tips as part of compensation for services, [1] of which there are well over 100,000. This case is before this Court *122 because the taxpayer did not keep any records of the amounts of tips received, or any other records which might be helpful in determining with a reasonable amount of accuracy the amounts of tips received, such as records of the hours of shifts worked; when the shifts were, during either the day or the evening; the number of days of employment during various seasons of the year; and the number of days and seasons of unemployment. But every taxpayer is required by law to report in his income tax return, fully and honestly, every item of gross income received, and must maintain adequate records of some kind which will show to him and to the Commissioner the amount of income of all types received in each year. [2] If a taxpayer does not keep any records to show the full amount *123 of every kind of income received in a taxable year, or if such records as are kept do not clearly show the entire income, the Commissioner is authorized to make a computation of the amount of income in accordance with such method as in his opinion does clearly show the full amount of income received. [3] As we said in , affd. , certiorari denied : "The Commissioner need not accept, as complete, correct, and accurate the returns filed or the sworn statement of the taxpayer that his returns completely and correctly disclose his tax liability. The Commissioner has authority to check the returns against the records of the taxpayer and, if no records have been kept or if the records are incomplete, inaccurate, or otherwise unsatisfactory, he may seek information elsewhere to discover, assess, and collect the full tax liability imposed by law." *124 See, also, , affd. . In failing to keep records of his tips for each year, the petitioner failed to comply with legal requirements. The respondent, being unable to verify the amounts of tips reported, was authorized to make a computation of the amount of petitioner's tips in each year in accordance with a method which in his opinion showed the entire amount thereof. In making the determinations of the total amounts of tips received by Gomez in each year, respondent's method was to apply percentages of from about 71 to 91 per cent to the amount of wages. After the issuance of the deficiency notices, the agent interviewed Gomez and attempted to reconstruct his net income for 1955 on the basis of cash receipts and expenditures in each year. Gomez did not have records of his expenditures and the agent made estimates thereof. Such attempted reconstruction was made by the agent as a check on the deficiency notice determination of tips for 1955. Gomez was born in the United States but went to Mexico when he was very young. He learned to speak the Mexican Spanish language. He returned to the *125 United States in 1941. He was then unable to speak English. He did not know that he was required to file income tax returns. In March 1954 he went to the office of the Internal Revenue Service in Reno and discussed his problem with an agent. He then filed delinquent returns for the years 1951-1953. His estimate of the amounts of his tips was based upon the assumption that he had worked from 200 to 250 days each year and that his tips averaged about $2 per day, but he realized his own difficulty in attempting in 1954 to make estimates of tips received in the years 1951-1953 and recognized that his estimates might be low. Petitioner contends that his estimates of tips are approximately correct, because he was not employed during the entire working period of each year, and that his tips in each year were not as much as respondent determined. He testified that his expenditures during 1955 were considerably lower than the agent's estimate. Petitioner testified about his 1955 expenditures, and that because of the seasonal business of the hotels and restaurants in Reno, he was not employed every working day during the winter and spring, and that his tips were in the largest amounts during *126 July, August, and September. However, he did not state any actual amounts for tips received per day during the busy season when he worked every day and overtime. Petitioner cannot fully discharge his burden of proof by making estimates of the average amounts of his tips. The amounts he reported in his returns were mere estimates. If we were to accept testimony which gives estimates again, we would not recognize that respondent's determinations are prima facie correct, as we must do. On the other hand, we accept as true petitioner's testimony that he was unemployed part of each year; that he worked only part time during the winter and spring months; that he shared tips with bus boys; and that the total amount of his tips was much lower during the months when business was slack than it was during the best business months. Petitioner has failed to wholly meet his burden of proof. We are unable to believe that in each of the taxable years his tips were no more than he reported in his returns. Therefore, for failure of proof, part of the respondent's determinations is sustained. Petitioner has failed in his burden of proof, in part, because he did not keep any written records of the *127 amounts of his tips. Since he was extremely negligent in not keeping records, he must bear the tax consequences of his own negligence. In the future, he should make daily records of the full amount of tips received, and he should retain such written records to inform himself of the full amount of tips received for the purpose of making an honest and accurate report of the amount of income from tips in income tax returns. Upon the entire record it is found and held that petitioner received in each year at least the total amounts of tips stated in the Findings of Fact, and that he failed to report tips in the amounts of $100 for 1951; $180 for 1952; $500 for 1953; $900 for 1954; and $770 for 1955. Since petitioner made no contentions on brief that respondent erred in making additions to tax under sections 291(a), 294(d)(1)(A), and 294(d)(2), it is concluded that those issues have been abandoned. The amounts of the additions will be recomputed under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. According to recent reports of the United States Bureau of the Census, in 1950 there were the following number of waiters and taxicab drivers in the United States. ↩
Waiters, bartenders, count-
er workers and all serv-
ice workers except house-
hold
Male
136,465
Female
134,885
271,350
Taxi-drivers and chauf-
feurs
Male
76,599
Female
none stated
76,599
347,949
2. See sections 41 and 54 of the 1939 Code, sections 446 and 6001 of the 1954 Code, and the regulations thereunder. ↩
3. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *↩